We'll take up Cousin v. Tompkins. May it please the court, my name is David Wasserman and I am counsel for appellant Paul Cousin. I'll be mindful of my time and reserve one minute for rebuttal. I'd like to start by focusing on our ineffective assistance of counsel claim and explaining why we are entitled to relief on it. This court reviews the deficient performance prong of that claim de novo and under de novo review, trial counsel was deficient. We review it de novo with deference to the state court's determination, correct? We review the district court de novo to be sure, but we start off and that's, I raised this at the beginning because it's the 800 pound gorilla in this case, uh, with, with the problem of EDPA, which is that we must defer to the state court's determination that there wasn't ineffective assistance. Well, yes and no. And I say yes and no for a particular reason. First, the deficient performance question was not actually answered by the superior court at all. Uh, they did not dispose of that issue, which is why this question, which I'm sorry, it took me a long time to get to, uh, the California Supreme court did a postcard denial of habeas. Correct. Well, we can look through to the superior court's decision to understand the reasons. Don't we also have to assume that it denied habeas for any reason that it could have? Um, I would say yes in that the only reason that it could have, because the only part of the record that the superior court relied on in terms of the ineffective assistance of counsel issue was the prejudice issue. So if the superior, if the Supreme court is denying in a postcard denial, it would have done so on the prejudice. Didn't you raise in your petition to the Supreme court both prongs? Yes. And the Supreme court rejected it. And so therefore, don't I have to assume that the Supreme court also thought it's a stupid assumption, but the Supreme court tells us to make it. No. My answer is no, because even if they had thought we shot, uh, showed the first prong, but agreed that the superior court was correct on the prejudice issue, uh, then they could have denied it. So I don't think that the court has to take the assumption, uh, that the California Supreme court, uh, uh, found that trial counsel was not deficient. And I don't think that the court has to give deference to that sort of decision. So heading into trial, everyone knew that Roosevelt rush, the complaining witness in this case was a liar. Nobody disputed that the main questions were which version of events was a lie. What he told police on the night in question, or what he said at the preliminary hearing and why did he lie? And because trial counsel failed to conduct a reasonable investigation, the jury was deprived of reasonable answers to those questions. Trial counsel's investigation was unreasonable because he failed to do the one thing that any reasonable lawyer would do heading into trial, interview the key witnesses, witnesses, like the complaining witness himself, like Tashiana Kuyatay, like Edwin McConnell and Neil Bokda. All of these witnesses were readily available and had trial counsel interviewed all of them, or even some of them. He would have uncovered facts that the habeas superior court itself called so important to the ascertainment of truth that they would have provided context to an credibility, if any, should be given to the original report. As to Tashiana, do I have the name wrong, but doesn't the record indicate that he asked her to try to meet with her and she refused? So the record indicates a couple of things, actually. First, it shows that trial counsel sent an investigator to go meet with her. They set up a time to meet and she did not show up. That shows what trial counsel did. But if we look at what the first habeas lawyer on the case did, not six months after the trial, they had an investigator go and try to find her the same way, and within 13 days, that investigator was able to contact her, get a declaration signed, and submit the brief, whereas trial counsel had somewhere between 56 and 75 days to contact her. Only sent out the investigator to go try to contact her once or twice. That is not a diligent investigation. It would be helpful for me, and I don't know for the other judges, if you turn to the prejudice problem. So let's assume for a moment deficient performance by trial counsel. Certainly. And let me lay out what troubles me on both sides of this case so your colleague can respond to it too. This is a very thin case. There ain't much here. There's probably enough to get to the jury. I'm not asking you to concede that, but there's not much. On the other hand, trial counsel pretty effectively established on the stand that the witness was a liar. Why would it have probably or reasonably could probably change the result if he could establish that he had three stories instead of two? So I agree with your honor that it is a thin case. And because of that, the prejudice determination, at least it's what's required of petitioner or appellant, is lower in the sense that we certainly need to show that there will probably be a different result. But in this context, that weight of that evidence doesn't mean to be so weighty. What I think is incredible about this case is that trial counsel in his closing argument said that this case was about the power of the false accusation by someone with an agenda, but then didn't tell the jury what the agenda was. He had done an investigation, right? That's absolutely correct, your honor. And had he done an investigation, and correct me if I'm wrong, and interviewed the woman, he would have found out that, and correct me if I'm misstating the record, that she and Tompkin had been approached on the street by police prior to his arrest. I'm sorry, that she and Cousin had been approached prior to his arrest, and the officer told her that they were investigating a robbery. Is that right? That's correct. And so, the reason why... So, if that's correct, the government's case which rested entirely on the statements that your client made at the time of his arrest would have been very easily shown to be not the least bit inculpatory. That's correct, your honor. Well, it doesn't rest entirely on it, does it? It also rests on the 9-1-1 call, which I take it was admitted for the truth of the matter? Your honor, I would like to double check this and perhaps answer our rebuttal, but I think that the 9-1-1 call was admitted as impeachment evidence because the complaining witness was recanting on the stand. Right, right. No, of course it was impeachment evidence because he didn't adopt it on the stand, but when I look at sufficiency of the evidence, was it admitted for the truth of the matter? In other words, impeachment evidence can be admitted for the truth of the matter. I will say this, the government, the prosecutor certainly did try to use it to show that that was the report that occurred that evening, but even that phone call itself, where if a robbery occurs, for some reason, this person doesn't tell the police the name of the person who robbed them and then gives the false name of themselves and then doesn't stay where the police tell them to stay. No, I agree with your point that the evidence is very thin and I take, I think Judge Parker makes an excellent point here. What I'm trying to figure out is what were the facts on which the conviction was based and one of them was whatever your client said to the police and whatever explanation we might make for it, but I thought the 9-1-1 call in effect came in as evidence that the witness had accused your client of committing the crime as opposed to just evidence that what the story he was telling on the stand that your client didn't commit the crime was not true. So I'll look back at that and maybe you can too. Thank you, Your Honor, and I'd like to reserve the balance of my time. All right. Thank you, counsel. Let's see. Mr. Bates? No, Mr. Beasley. Thank you, Your Honor. Good morning. May it please the court. Christopher Beasley, Deputy Attorney General on behalf of the respondent. At the outset, I do agree with Mr. Wasserman that the standard of review for the performance prong is de novo because if we look at the ilsed presumption, it looks through to the superior court and I do agree that the superior court rested its ineffective assistance of counsel analysis on the prejudice prong and not on, it didn't address the performance prong. So I do believe that this court can review the performance of counsel de novo in this instance. However, that's not true as to the prejudice prong. Under the prejudice prong, that was clearly a ruling on the merits on prejudice and so the 2254D deference would apply to that. This is helpful. I won't repeat all the things Judge Parker said, but we have a critical witness, the key to the state's case, and the lawyer doesn't even interview it. Well, the record shows that this lawyer did try, okay? So we had an investigator and according to Mr. Diallo's declaration that was submitted in 1952, the investigator made repeated attempts to contact Kouyaté. I'm talking about Rush. Does the record show more than two? It's just repeated. We don't know the number. We just know that it's repeated efforts to try to contact Kouyaté. As to Rush, we know that this attorney didn't interview Rush because of the risk of getting a third, possibly different, account and that would then create even further inconsistent statements that would muddy the waters and so that was a tactical decision that this attorney made. He explained that. Yeah, but look, at the end of the day, at this trial, when the government rested, I don't understand how under any calculus proof was adduced beyond a reasonable doubt. Rush, first of all, explain to me what is a state court proceeding, what is a reasonable doubt? What did the judge tell the jury a reasonable doubt was? The standard instruction on reasonable doubt, that is that state of mind in which you have an beyond reasonable doubt is that state of mind in which you have an abiding conviction that the court gave the standard instruction and as to sufficiency of evidence that was... Okay, so let me ask you this. How can this case have been proved beyond a reasonable doubt when you have a robbery that has no victim, no proceeds, no weapon and no witnesses? Because you have statements that were made by the victim who said he was the victim. Even though he recants, those statements that he made to the police come in for their substance and so you have those victim statements that come in to establish it. But once they were repeated under oath, I mean, once they were recanted under oath, what's left of the earlier statements? Under California law? I mean, you may have some evidence, granted that it might be some evidence, but it's just inconceivable to me that that evidence meets the beyond a reasonable doubt standard you just mentioned. But it did. In fact, that was the issue. Well, it did, but I mean, the jury convicted him, but that begs the question. And on the direct appeal, the court of appeal reviewed that very question. The direct appeal issue was whether there was sufficient evidence to establish the robbery beyond a reasonable doubt. The court of appeal on direct appeal, which is not a claim on this in habeas, but on direct appeal that was litigated here as to what the what the trial attorney did, what Mr. Diallo did. He performed reasonably. He did what he could under the circumstances. He tried to interview Kouyaté. He had his investigator go out there. He had he gave the investigator everything that the investigation. On the point of Kouyaté, the superior court said that it's clear that Diallo's investigator made contact with Kouyaté on at least one occasion that did not obtain a statement at time and was unable to secure her attendance for a scheduled interview. That's all. And and what we also have beyond that on page 152 of the second volume of the excerpts of Diallo's declaration in which he said that he that he had his investigator make repeated. I'm sorry, page 149, where he had his investigator make repeated efforts to try to establish contact. But this is this is the last recent decisions, actual finding, which is clear. We have to adhere to. Well, that's correct. That's we know that that's much that much we know. OK, so but it doesn't preclude the conclusion that this attorney made additional efforts that this investigator made additional efforts. Now, turning to the prejudice prong, Judge Parker asked a question which is extraordinarily important. What we have here is the idea that the police approached Cousin and Kouyaté at the same time. But that's not what Kouyaté testified to. On pages 300 to 301 of the second volume of the excerpt of record, she testified that Cousin was across the street in a parking lot for a car wash when police approached her. She was by herself and the police talked to her by herself. And they asked her if she allegedly asked her if if she had reported a robbery. She told them no. After that, the police went to talk to Cousin. She wasn't allowed to go next to Cousin. She testified that she wasn't allowed to go near him. So this idea that they were together is false. The testimony from Kouyaté herself is that they were not together. And then you add to that the testimony from the police officers at trial in which they made every effort to keep communication lines separate so that Cousin would never know what they actually were investigating, what the nature of the crime was, who the victim was. You take that into consideration with Cousin's then inculpatory statements. I didn't rob nobody. And then telling Kouyaté Roosevelt is trying to accuse me of robbing him. Those statements made in isolation without the police having tipped him off, without Kouyaté being able to communicate with him. Those are inculpatory statements. And so this trial court then is entitled to take all of that, take the entire totality of the record and conclude there's no prejudice here. Even if this version of events had been presented to the jury, the jury still would have had enough evidence that there's room for a robbery. Another point that the defense counsel... Let me stop you for a second. I know we're not looking at sufficiency of the evidence. The statements are inculpatory. And let's assume that the jury was entitled to conclude that Cousin didn't know at the time that he'd been accused of a robbery, but nobody had told him. The police had done the appropriate cordon sanitaire. Um, you agree those statements alone wouldn't be enough to convict, don't you? I didn't do no robbery. That's correct. In fact, that's correct. So now we got to get to Rush's testimony, which, well, Rush's statements to the police, because his testimony on the stand doesn't help you. Yeah, correct. Rush's statement to the police. And I guess the point that your friend is making is that I need to demonstrate that uh, I now know there's a, I now know there's a very plausible reason for him to make up this story because we've got this prostitution angle. And if, if counsel had only investigated that, he could have demonstrated to the jury that Rush's statements to the police were fabrications. He had some basis to do it at trial because he changed his story, but he would have had an even better basis to do it had he done the requisite investigation. I apologize to defense counsel if I've made your argument weaker than you think it is, but let's assume that this argument, respond to it, please. The thing is that that then also, all of that would have been opened the door to the prosecutor to present yet another motive for why there's a robbery. We know then that Cousin doesn't like Kouyaté engaging in these prostitution acts. We know that he didn't approve and that then he has a motive to try to divest Rush or get a cut of the proceeds that Rush earned from having created this, this prostitution transaction. So there's now a motive that now the prosecutor gets to use and add to the mix. So all of a sudden it strengthens the motivation for there being a robbery or taking that, that wasn't there in the first place. So yeah, on the one hand, it might have supported the defense, but it also would have supported the prosecution. That's why this trial court was able to conclude this wouldn't have made a difference. This wouldn't have made a difference because it would have opened the door to further, further liability motivations and, and, and possibilities and theories for the prosecutor to have worked with. None of this, none of this evidence establishes that, that Cousin was actually innocent. And so that's why ultimately there, there isn't any prejudice here. The, everything that was testified to still left room. I think you're now, no, you're confusing two different issues for, for Strickland prejudice, put aside at Bedford for a moment. All we need is a reasonable probability that the outcome would have been different. We don't, you don't need to show actual innocence to demonstrate Strickland prejudice. I agree with that. And that's, that's why this trial court, which understood that standard said there would not be a reasonable probability of a different outcome because all of this by providing an additional theory of culpability that the prosecutor would have been able to argue. The point is that Cousin's lawyer had no ability to think through or analyze any of this because he didn't do anything. He didn't do any investigation. He didn't do any, he didn't interview anyone. And that doesn't matter now at this point, because we have a full record that was developed on habeas. And everything is now in front of the trial court in that habeas proceeding. And so everything is before that trial court. That trial court is entitled to make that call as to whether this is prejudicial or not under the Strickland standard. The trial court did that, applied the standard appropriately, looked at all the facts and was able to then figure out, no, there's not prejudice. And then adding to that the double deference under Harrington v Richter, that this court affords to the trial court. This is not something that the district court got it right. The district court properly denied habeas relief. Furthermore, in terms of the timeline, that counsel argues was what made it impossible for there to have been a robbery. That timeline was refuted by Cousin himself in his own declaration, where he admits that between 1215 and 1245, he was not with Cuyatay. That is a window of time in which that robbery could have taken place. Cousin's own declaration made that room, made that window for that to take place. This is a trial court that got this right. It did everything it was supposed to do. And under Ed Poddeference, this court should affirm the district court's rejection of the habeas petition. Unless this court has further questions, I submit. Okay, thank you, Mr. Beasley. Mr. Wasserman. Thank you. I'll try to keep this brief. First, to answer the court's question, yes, the 911 call would come in as substantive evidence. That was a prior inconsistent statement. Two, the fact is that Cuyatay was, as Your Honor mentioned, at least contacted once by the investigator, but no statement was taken. She also barged into the courtroom during closing arguments, and nothing was done about that. In terms of trial counsel's concern about Rush's statement and having another statement, he wouldn't have to use the statement if he didn't need to use the statement. The idea that he just failed to go talk to him because he didn't want to get additional information doesn't really carry the day. Cuyatay's declaration that she filed with the original habeas petition actually says us, that's volume two of the excerpts of records at 143, in terms of when the police stopped them and asked her, specifically, whether or not she reported a robbery. And that's when Cousin would have heard that information. Furthermore, the idea that the prostitution- On that last point, what time frame was that, when they were together and were told there was a robbery? Before or after he made the allegedly inculpatory statements? That's before the inculpatory, the allegedly inculpatory statements. It's before Cousin goes to the gas station, or the car wash, rather, to plug in his cell phone. So does anyone know, and this is just troubling me, I find this case really troubling. Does anyone know why Rush called the police and reported a robbery in the first place that night? Your Honor, Rush admitted at the habeas hearing that the reason he called the police was to get Cousin out of the way because Mr. McConnell requested that Rush bring Ms. Cuyatay back to the hotel room to engage in another act of prostitution. Without Mr. Cousin being there. Because earlier in the evening, when Cuyatay and McConnell were together, Mr. Cousin came to the door and knocked and took her out of the room. And the Superior Court even said that that is the one thing that rang true throughout the entire habeas hearing, was that McConnell and Rush had arranged to get Cousin out of the way for Cuyatay to commit another act of prostitution. Two questions. When is your client's sentence up? Your Honor, he's out. His sentence has been up. Yeah, it struck me as really odd to be sentenced to eight years for stealing $20. And he did that time. Okay. The other thing, your learned adversary was quite clear that based on his reading of the record, Cousin could not hear the exchange between the police and Ms. Cuyatay. Is that your understanding of the record also? So, no. And the reason is because of two things. One, while I will concede to my colleague that Ms. Cuyatay initially testified at the hearing that it was her and her alone, I then impeached her with her prior declaration that was filed closer in time, where she did say, quote, the police stopped us and asked me if I made a 911 call. I told them I didn't. So then the other issue is at trial, Officer Crawford, who was the officer that was with Cousin, radioed to Officer Curtis that he had someone detained matching the description of the suspect for that evening. Cousin is on that side of the conversation between Crawford and Cousin. I'm sorry, Crawford and Curtis. And so he would have heard Crawford telling Curtis that he had a suspect in custody. But that's a suspect. Am I compelled to the conclusion that he knew he was being charged with robbery? I think that you're compelled to that conclusion based on Cuyatay's declaration, as well as Cousin's testimony at the habeas hearing. I know what Cousin said. The question is, in this record, it seems to me there's evidence from which a reasonable finder of fact could conclude that he didn't know why he was being detained before he made the inculpatory statements. And so that's why I'm asking. Certainly her testimony would have led you to think that, even though you impeached her. The jury doesn't have to believe the impeachment, or the finder of fact doesn't have to believe the impeachment. So couldn't somebody conclude that he didn't know based on this record? No, based on this record, no, I don't think that that's a reasonable conclusion. Well, I'm still confused because the record, and this is at page 143, this is her statement, and she says, quote, the police stopped us and asked me if I made a 911 call. I told them I didn't. The police, where was Paul Cousin too long for just asking his name and letting him go? The police asked me about a robbery. I asked them what robbery and told them he has been with me the whole time. And so the question is, could Cousin hear that? That's the question, right? I believe that, yes, I think that Cousin could hear the statements that are being attested to in that declaration. But I think the more important thing is, even if he couldn't, that allegedly inculpatory statement needs to be weighed against the totality of the evidence. And the totality of the evidence, here, as your Honor indicated earlier, is very, very thick. But our evidence is incredibly strong and corroborated through multiple witnesses that even if Cousin, even if Diallo, the trial counsel, had not interviewed Kuyete, could have gone and interviewed all these other witnesses, who would have provided compelling evidence of a motive for Mr. Rush to lie at the preliminary hearing and at the evening of the event, in terms of his motivations for why he reported the robbery. All right, thank you, counsel. Cousin v. Tompkins will be submitted.
judges: WARDLAW, Parker, HURWITZ